923 So.2d 976 (2006)
STATE of Louisiana, Appellee,
v.
Deangelo BROWN, Appellant.
No. 40,769-KA.
Court of Appeal of Louisiana, Second Circuit.
March 8, 2006.
*977 Louisiana Appellate Project, by G. Paul Marx, Paula Corley Marx, Lafayette, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, Melissa Sugar, Assistant District Attorneys, for Appellee.
Before STEWART, PEATROSS & LOLLEY, JJ.
PEATROSS, J.
This appeal arises from the conviction of Deangelo Brown ("Defendant") for armed robbery of Roland Keith Arthur ("Mr. Arthur" or "the victim"). Defendant was sentenced to serve 20 years at hard labor without benefits. For the reasons set forth herein, his conviction is affirmed.

FACTS
On June 4 or June 5, 2003, Mr. Arthur was traveling to Colorado for work as a directional driller of oil wells when he stopped in Bossier City, Louisiana. He asked a man walking near a motel to help him find a prostitute, specifying that he was looking for a white woman. After an extended period of looking at motels and a stop at a convenience store for cigarettes and soda, the man directed Mr. Arthur to apartments near the corner of Jean and Dickerson Streets. After some argument about the prostitute's race, Mr. Arthur agreed to pay her $40 or $50 for anal sex and give the man a $10 "finder's fee." He paid the woman and she left the apartment promising that she "would be right back." When she did not return, Mr. Arthur left the apartment and found "two guys stealing the stuff out of the back" of his truck.
Mr. Arthur told the assailants to get out of his truck and four other men told him to go back into the apartment. He stated that the six men blocked his path as he approached the truck. At this point, one of the men attempted to sell him crack cocaine (which he refused). After offering him the drugs, the men demanded his wallet and one pulled a gun. The victim identified Defendant at trial as the man who pulled the gun.
Mr. Arthur told the men that, if they wanted his wallet, they would have to take it from him. After stating his credo, the assailants attacked Mr. Arthur and beat him for what "seemed like an eternity." He described a "wild-eyed man" who took three swings at him before he collapsed under the assailants' attack. As a result of the attack, the victim lost five teeth, needed 28 stitches around his eyes and had both eyes swollen shut from the onslaught. *978 Mr. Arthur stated that Defendant took his wallet and passed the money he had in it out among the others.
Mr. Arthur testified that he called his wife from his cell phone and that she gave him directions to a hospital in Shreveport, Louisiana. Mr. Arthur initially lied at the hospital to Officer Greg Ebarb and Detective Daryl Worley about the incident because he did not want his then-wife to discover he had been soliciting a prostitute. After conducting further investigation and doubting the truthfulness of his initial statement, Detective Worley called Mr. Arthur back to Bossier City to give a second statement on July 29, 2003.
Detective Worley prepared photo lineups based upon information in a note written by an (at that time) anonymous informant and further investigation including an interview with Kevin Grayson ("Grayson").[1] Mr. Arthur identified Grayson as the "wild-eyed man" after four or five minutes of studying the photographs; however, he was unable to identify Defendant at this time.
Grayson testified that he witnessed Defendant rob a white man at gunpoint in the parking lot of the apartment complex on the date in question. He stated that, as the victim was walking from the apartment complex, Grayson made an offer to sell him "some fake drugs" that looked like crack cocaine, but the victim was not interested. Grayson watched the victim tell Defendant and others that he would not give up his money. He saw Defendant and the others attack the victim and observed Defendant taking the victim's wallet. Grayson also testified that he did not actively participate in the robbery; however, he pled guilty to simple robbery in connection with the incident in an agreement that gave him a five-year sentence to run concurrently with another and the State's promise not to file an habitual offender bill.
For his role in this crime, Defendant was arrested, tried and convicted of armed robbery. He was sentenced to serve 20 years at hard labor without benefits. He now challenges the sufficiency of the evidence used to convict him in this case.

DISCUSSION
Assignment No. 1 (verbatim): There was insufficient evidence to prove beyond a reasonable doubt that [Defendant] committed an armed robbery, because the state's witnesses could not be considered credible under any view of their testimony, prior inconsistent statements and lack of corroboration.
La. R.S. 14:64 defines armed robbery as:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. *979 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard, supra, is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. Id. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048.
Defendant argues on appeal that the testimony of Mr. Arthur and Grayson was not credible and was insufficient to support his conviction. He claims that Grayson was not credible because of his extensive criminal record, the inconsistency in his statement about who had taken the wallet and his description of Mr. Arthur's injuries. Defendant states in his brief that he was identified at trial because he "was in fact the only black man in court." [sic]
Defendant cites State v. Smith, 430 So.2d 31 (La.1983), for the proposition that the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. The likelihood of misidentification violates due process when the totality of circumstances show that misidentification probably occurred. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). For an in-court identification to be inadmissible due to an allegedly suggestive identification procedure, there must be a substantial likelihood of misidentification in addition to the suggestive identification procedure. Id. From this line of cases, Defendant argues that his in-court identification was "rancidly unbelievable" and places his verdict in jeopardy "even under the most liberal standard."
The State responds by asserting that the evidence presented was sufficient to support the conviction and that the credibility issues raised by Defendant are not within the scope of appellate review. It cites State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983), which held, inter alia, that the appellate court should not "second guess" the credibility evaluation of the trier of fact beyond the sufficiency of the evidence review set forth in Jackson, supra. It further argues that the appellate court does not assess the credibility of a witness, nor re-weigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d *980 442. From these cases, the State argues that Defendant's conviction was well-grounded and strongly supported. We agree.
Our review of the case sub judice reflects that the evidence was sufficient to support Defendant's conviction. Mr. Arthur admitted at trial that he lied to both Officer Ebarb and Detective Worley about the events. He explained that he did not tell the truth because he did not want his ex-wife to find out that he wanted to cheat on her. He further stated that, after Detective Worley confronted him on July 29, 2003, and suggested that there might be more to the story, Mr. Arthur admitted his lie and told a version similar to the one he gave at trial.
Further, on cross-examination, Mr. Arthur admitted that he told Detective Worley he did not actually see who took his wallet, but he assumed it was Defendant. He clarified that he based his assumption on the fact that when he looked up, he saw Defendant holding the wallet and passing the money out.
The victim identified Defendant at trial as the man with the gun who robbed him. When asked why he had been unable to identify Defendant in the photo lineup but could at trial, Mr. Arthur explained, "That picture does not look like ... him." He continued later stating, "I've seen his face a thousand times in my mind. I mean, I ain't going to forget his face." Detective Worley admitted that he would have probably chosen another photograph of Defendant to use in the photo lineup if one had been available.
We would be remiss not to state that, considering the facts at issue in the case sub judice, Mr. Arthur's personal credibility might leave something to be desired. Similarly, we have considered, and do not discount, that Grayson has a lengthy and questionable criminal past. Nonetheless, the evidence presented, while often conflicting and muddled, was sufficient to support the conviction. Both Grayson and the victim mirrored these operative facts: that the victim entered the prostitute's apartment, came out shortly thereafter, saw that he was being robbed, confronted his robbers and was held at gunpointby Defendantprior to being accosted by several other assailants. There is little deviation in the record from these facts. Our review of this case reveals no due process violation in the identification procedure, and, similarly, that the victim had little difficulty identifying Defendant in court as the gun-wielding man who demanded his wallet on the night in question. This court is bound by the standard of review set forth in Jackson, supra, and Bosley, supra. Given this lofty standard of review, coupled with the jurisprudential interpretations set out in Sutton, supra, and Owens, supra, we cannot say that the jury was irrational in concluding that Defendant was the guilty party in this case. Accordingly, we are in no position to "second guess" the trier of fact and see no reason to overturn the trial court's ruling. Therefore, we conclude that this assignment is without merit.

CONCLUSION
For the reasons set forth herein, the conviction of Defendant, Deangelo Brown, is affirmed.
AFFIRMED.
NOTES
[1] This court notes that Grayson was originally charged as a co-Defendant. He took a plea bargain in exchange for his testimony and received five years on a simple robbery charge.