LOVE, J.,
dissents.
hi respectfully dissent with the majority’s finding that the element of entry was proven beyond a reasonable doubt. The state sought to prove this entry with the testimony of Ms. Jenny Brown, who made the identification of the defendant. Ms. Brown testified that J.N. opened the door of her mother’s vehicle and reached into the front seat to take the purse.
“One-on-one confrontation identifications are not favored.” State v. Chapman, 410 So.2d 689, 709, (La.1981). However, one-on-one identifications between a suspect and victim are permissible when justified by the overall circumstances, such as where the accused is apprehended within a short time after the commission of the offense and is returned to the scene of the crime for on-the spot identification or when identification is made shortly after the commission of the crime. State v. Sewell, 35,549, p. 18 (La.App. 2 Cir. 2/27/02), 811 So.2d 140, 150. Fairness is the standard of review for identification procedures and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 113-114, 97 S.Ct. 2243, 2252-53, 53 L.Ed.2d 140 (1977).
The likelihood of misidentification violates due process when the totality of the circumstances indicates that misidentification probably occurred. State v. 2Brown, 40,769, p. 5 (La.App. 2 Cir. 3/8/06), 923 So.2d 976, 979, (citing, Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). Thus, it must be proven that the identification procedure was unduly suggestive and that there is a substantial likelihood of misidentification in addition to the suggestive identification procedure. Sewell, 811 So.2d at 150. An identification procedure is unduly suggestive if it focuses attention on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980).
When assessing the reliability of an identification, or the substantial likelihood of misidentification, the following factors must be considered: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. Sewell, 811 So.2d at 150, (citing, Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. Manson, 97 S.Ct. at 2253. Further, in determining whether the ruling on a defendant’s motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion to suppress but may also consider *917 pertinent evidence given at the trial. State v. Higgins, 01-368, p. 5 (La.App. 5 Cir. 10/17/01), 800 So.2d 918, 921.
In the matter sub judice, the record does not establish the reliability of the infield identification. However, the testimony of the witness does establish that the witness may have surmised that the person in custody was the perpetrator because he was in the police car. The colloquy at trial proceeded as follows:
Defense Counsel: If you see someone in a police car you know they’ve done something bad?
Ms. Brown: Yes.
_[⅛ • •
Defense Counsel: Did you see him get out of the police car?
Ms. Brown: Yes.
[[Image here]]
Defense Counsel: And when you saw him get out of the police car you knew he had done something bad?
Ms. Brown: Ah-huh.
In light of the transport of the person in custody to the site of the show-up in a police car coupled with the witness’ view that people in a police car have done something bad, it stands to reason that the infield identification procedure was unduly suggestive and had a corruptive effect. While Ms. Brown made an in-court identification of the defendant at trial, the procedure by which Ms. Brown identified J.N. as the perpetrator at the crime scene station was unduly suggestive and brings into question the accuracy of Ms. Brown’s in-court identification and her opportunity to observe the J.N. at the crime scene. Thus, Ms. Brown’s testimony relating to the pre-trial identification and the subsequent in-court identification is poisonous fruit of this initially prejudicial and suggestive confrontation.
It is also notable that the one-on-one identification of the defendant was conducted prior to any description of the defendant being provided by the witness. Sergeant Philibert testified that Ms. Brown “didn’t give a description” of the defendant prior to the show-up. Ms. Brown was asked twice by the State if she identified J.N. at the initial encounter and she was unable to answer with certainty. A portion of the colloquy at trial went as follows:
State: And you identified him as the person who stole your mother’s purse to the police?
Ms. Brown: I don’t think so.
[[Image here]]
|4State: Did you ever tell the police that this is the person who stole your mother’s purse?
Ms. Brown: I think so.
State: Did you point him out to the police as the person who stole your mother’s purse?
Ms. Brown: Ah-huh.
Analyzing the witness’ testimony under the Manson v. Brathwaite factors, first, Ms. Brown’s opportunity to view the perpetrator at the time of the crime is uncertain. However, she testified that the perpetrator asked her “[wjhere’s your mom?” and took the purse. Second, Ms. Brown’s degree of attention was good, given that she was able to run in the house and tell her mother that a gentleman had stolen her purse after the event transpired. Third, as to the accuracy of the witness’ prior description of the criminal, as noted above, the witness gave no description of the perpetrator prior to the infield identification. Fourth, the level of certainty demonstrated at the confrontation was questionable. Fifth, the length of time between the crime and the confrontation was “under forty, fifty minutes” according to Sergeant Philibert.
*918 After consideration of these factors, and weighing the corrupting effect of the suggestive identification procedure against these factors, the totality of the circumstances do not demonstrate that the identification was reliable. Thus, the out-of-court identification was not properly admissible.
Without this identification, only circumstantial evidence was used at trial to support the facts necessary to constitute the crime of simple burglary. When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that |Bevery reasonable hypothesis of innocence is excluded. La. R.S. 15:438. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Garcia, 483 So.2d 953 (La.1986).
As the majority states, the “entry” element of the crime of simple burglary is satisfied with evidence that any part of the defendant’s person intrudes, even momentarily, into the vehicle. State v. Smith, 02-1018 (La.App. 5 Cir. 3/ 11/03), 844 So.2d 119, 125. Without the witness’ identification, the circumstantial evidence does not prove the element of entry “such that every reasonable hypothesis of innocence is excluded.” La. R.S. 15:438. The record does not contain ample evidence from which a rational trier of fact could have found that any part of the defendant’s person intruded into the vehicle, and therefore, the State has failed to prove the essential elements of the crime of simple burglary beyond a reasonable doubt. Further, after reviewing the evidence presented at trial, in the light most favorable to the prosecution, I do not conclude that a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded.