NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-792

STATE OF LOUISIANA

VERSUS

DEVONTA MITCHELL

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 302702
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Oswald A. Decuir, Billy Howard Ezell, and James T. Genovese, Judges.

AFFIRMED.

James C. Downs
District Attorney, Ninth Judicial District Court
701 Murray Street
Alexandria, LA 71301
(318) 473-6650
COUNSEL FOR APPELLEE:
    State of Louisiana

Michael W. Shannon
Assistant District Attorney
P.O. Box 1792
AlexandriA, LA 71309
COUNSEL FOR APPELLEE:
    State of Louisiana

**Douglas Lee Harville**
**Louisiana Appellate Project**
**400 Travis St., Suite 1702**
**Shreveport, LA 71101**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Devonta Mitchell**

**Ezell, Judge.**

On July 2, 2010, the State filed a bill of information apparently charging Defendant Devonta Mitchell with one count of attempted first degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30, and one count of aggravated burglary, a violation of La.R.S. 14:60. On January 11, 2011, the State amended the first count to attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1.[1] Jury selection began on the same date; said jury began hearing evidence the next day and found Defendant guilty as charged on both counts. On April 18, 2011, the court sentenced him to twenty years at hard labor, without benefit of probation, parole, or suspension of sentence for attempted murder, and to a concurrent ten-year sentence at hard labor for aggravated burglary.

Defendant now appeals his sentence through counsel, assigning a single error. He challenges his conviction pro se, assigning three errors.

## FACTS

In May of 2010, Defendant participated in an armed home invasion of victim Sammie Williams's trailer. Ms. Williams was there with two infants, her great niece, and great nephew. While Defendant and an accomplice were searching the trailer, another woman, Mabel Fisher, parked in the driveway. The men approached her and ordered her to leave; one of them leveled a pistol at her. Nonetheless, she refused their order, and they ran toward a white SUV. Ms. Fisher drove after them, and the man with the pistol turned and shot at her. When they drove away, she gave chase and tried to write down the license plate number. At some point, the SUV stopped; the driver got out, ran toward Ms. Fisher's car, and fired two shots.

---

[1] We observe that in his pro se brief, Defendant spells his name "Davonta Mitchell." Pursuant to this court's standard practice, we have spelled his first name "Devonta" because that spelling appears on the charging instrument. (R. p. 7).

# ASSIGNMENT OF ERROR

In his sole counsel-filed assignment of error, Defendant argues his twenty-year sentence for attempted murder and his ten-year concurrent sentence for aggravated burglary are excessive. This court recently explained:

> This court has previously discussed the standard for reviewing excessive sentence claims:
>
> > [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.
>
> *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331 (citations omitted)(second alteration in original). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).
>
> In *State v. Lisotta*, 98-648, p. 4 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, 58, *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183, the fifth circuit held that a reviewing court should consider three factors in reviewing sentences imposed by the trial court: (1) "the nature of the crime," (2) "the nature and background of the offender, and" (3) "the sentence imposed for similar crimes by the same court and other courts."

*State v. Chaisson*, 09-119, pp. 25-26 (La.App. 3 Cir. 10/7/09), 20 So.3d 1166, 1182-83.

The nature of the crimes is that they are both violent felonies. In the particular facts of this case, the home invasion victim was an elderly woman with

2

two very young children in the residence. As for the nature of the offender, he was

a sixteen-year-old first offender at the time he participated in the crimes. The trial

court considered that Defendant's accomplice was twenty-one at the time.

As for the third *Lisotta* factor, we note an earlier survey of the jurisprudence

by this court:

> The Defendant's sentence is in the middle of the range between the minimum ten years and the maximum fifty years for the convicted offense. A pertinent review of sentencings for attempted second degree murder is set forth in *State v. Napoleon*, 01-1222, pp. 6-7 (La.App. 5 Cir. 2/26/02), 811 So.2d 980, 983-84, as follows:
>
>> A review of the jurisprudence indicates that similar sentences have been upheld for defendants without prior felony records. In *State v. Ethridge*, 96-1050 (La.App. 3 Cir. 2/5/97), 688 So.2d 1274, 1276, the Third Circuit upheld defendant's 45 year sentence for attempted second degree murder despite the fact defendant had no prior criminal record. The defendant had fired six shots into the victim's residence through a bedroom window severely wounding the victim.
>>
>> In *State v. Owens*, 606 So.2d 876 (La.App. 2 Cir.1992), the Second Circuit affirmed defendant's 30 year sentence for attempted second degree murder despite defendant's claim the sentence was excessive based on his youthful age of 25 years old and the fact he had no prior felony convictions. Defendant had fired several shots at the victim in a crowded barroom.
>>
>> In *State v. Camese*, 00-1943 (La.App. 4 Cir. 7/11/01), 791 So.2d 173, the Fourth Circuit affirmed defendant's 50-year sentence for attempted second degree murder despite the fact defendant had no prior criminal record. Defendant approached the victim at the security gate of the victim's apartment, pointed a gun to his head, and demanded the victim's car. The victim gave defendant the car at which time defendant shot him in the head.

*State v. Clark*, 06-508, p. 5 (La.App. 3 Cir. 9/27/06), 940 So.2d 799, 802-03, *writ*

*denied*, 06-2857 (La. 9/21/07), 964 So.2d 324.

*Clark* shows the present sentence for attempted second degree murder does not fall outside of jurisprudential norms. As for the aggravated burglary sentence, the court notes:

> We further find that a comparison of sentences for similarly situated defendants and a like crime shows that the trial court's sentencing choice in the present case conforms with rather than deviates from those cases. *See State v. Williams*, 448 So.2d 659 (La.1984) (a twenty-one year old defendant with two prior convictions was sentenced to twenty years for the aggravated burglary of a sixty-one year old woman who resided alone); *State v. Cormier*, 534 So.2d 994 (La.App. 3 Cir.1988), *writ denied*, 587 So.2d 691 (La.1991) (a twenty-year sentence for a first-time offender for the aggravated burglary of the defendant's great-grandmother's home was not excessive where the defendant armed himself with a hatchet).

*State v. Prejean*, 10-480, pp. 5-6 (La.App. 3 Cir. 11/3/10), 50 So.3d 249, 253.

*Prejean* shows that Defendant's ten-year sentence for aggravated burglary does not fall outside the norms of Louisiana jurisprudence. Further, review of the *Lisotta* factors demonstrates Defendant's sentences are not excessive.

## PRO SE ASSIGNMENT OF ERROR NUMBER ONE

Defendant's first pro se assignment of error is not clear. The first portion of his argument appears to allege racial discrimination during jury selection as prohibited by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). However, as the State observes in its supplemental brief, no *Batson* claim was raised below. Defendant cannot raise such a claim for the first time on appeal. *State v. West*, 419 So.2d 868 (La.1982).

Defendant also appears to make an ineffective assistance of counsel claim. This argument will be addressed under the third assignment of error, which is composed of several ineffective assistance of counsel arguments.

## PRO SE ASSIGNMENT OF ERROR NUMBER TWO

In this assignment of error, Defendant claims that after the trial court issued a sequestration order to the witnesses, he "has reason to believe the witnesses

4

communicated the case [sic]" and therefore they should have been disqualified. However, Defendant cites nothing to support his "reason to believe," nor does he claim he made an objection below. As Defendant's argument lacks any factual support, the assignment lacks merit.

## PRO SE ASSIGNMENT OF ERROR NUMBER THREE

In his final *pro se* assignment, Defendant argues his trial counsel was ineffective for picking an all-white jury. The standard for such a claim has been explained by this court:

> Defendant's first trial ended in a mistrial. Thus, any alleged errors of counsel during the Defendant's first trial are not appealable. *See* La.Code Crim.P. art. 912.

> In *State v. Griffin*, 02-1703, pp. 8-10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40, our brethren of the Fourth Circuit, with whom we agree, reviewed the law applicable to claims of ineffective assistance of counsel stating as follows:

>> Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. *State v. Prudholm*, 446 So.2d 729 (La.1984); *State v. Johnson*, 557 So.2d 1030 (La.App. 4 Cir.1990); *State v. Reed*, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. *State v. Seiss*, 428 So.2d 444 (La.1983); *State v. Ratcliff*, 416 So.2d 528 (La.1982); *State v. Garland*, 482 So.2d 133 (La.App. 4 Cir.1986); *State v. Landry*, 499 So.2d 1320 (La.App. 4 Cir.1986).

>> The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller*, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland*, *supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's

deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, *supra*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow*, 612 So.2d 191, 199 (La.App. 4 Cir.1992).

This Court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." *State v. Bienemy*, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." *State v. Brooks*, 505 So.2d 714, 724 (La.1987).

Of the numerous errors Defendant alleges were committed by counsel, many appear to fall "within the ambit of trial strategy." However, Defendant also sets out a number of alleged inconsistencies in the case which he asserts, had counsel investigated and questioned witnesses thoroughly, there would have been a different result at trial. Many of the alleged inconsistencies can be found in the exhibits attached to Defendant's brief. However, none of the those [sic] exhibits were introduced into evidence at the trial which resulted in the Defendant's convictions.

We cannot determine from the record what trial counsel did or did not do, what documents counsel possessed, or the basis for any decision made by counsel. As stated above, a number of the various complaints made by Defendant appear to involve counsel's trial strategy.

*State v. Schexnaider*, 03-144, pp. 17-19 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 462-63.

Defendant argues that trial counsel incorrectly selected jury members, and "the Defendant was not allowed the opportunity to access [sic] in picking a jury." The court interprets the latter statement as a claim that his counsel denied him any

6

input in the jury selection process. Such a claim inherently involves client-attorney matters that are outside the record. Therefore, this portion of Defendant's argument should be relegated to the post-conviction process.

Returning to the first part of the argument, the court finds that trial counsel's methodology in picking the jury was a matter of trial strategy and thus does not establish that trial counsel was ineffective pursuant to *Schexnaider* and the authorities therein. The State argues that counsel pursued a strategy of picking an all-white female jury, but the record does not clearly support the contention. Further, counsel's specific strategy need not be determined; Defendant's argument directly attacks that aspect of trial counsel's strategic methodology. Therefore, this portion of Defendant's argument lacks merit.

In his first assignment of error, Defendant also makes an ineffective assistance of counsel argument. Without naming the case, he appears to argue that trial counsel should have argued that African-Americans were unfairly excluded from the jury pursuant to *Batson*, which was cited in the earlier assignment. This issue could be viewed as being subsumed within the ambit of trial strategy. Although trial counsel did not argue *Batson*, he did argue that the venire did not represent a cross-section of the community. Apparently, he thought attacking the venire was a better strategy than asserting *Batson*. Also, as mentioned earlier, the State alleges that trial counsel deliberately selected a jury composed entirely of white females. However, a determination of counsel's trial strategy in this context would necessarily involve matters outside the current record.

In the post-conviction process the parties can further develop the record. The current record contains the jury sheets which show the parties' peremptory challenges. However, as mentioned earlier, the strategic motivations of Defense

counsel and the State's counsel necessarily fall outside the record. The exact reason for the latter's strike against Elie is not clear.

The supreme court has stated:

> Second, defendant contends that he received ineffective assistance of counsel because his attorney did not object to the prosecutor's attempt to eliminate potential jurors on the basis of race, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defendant argues that it was ineffective for his attorney, whose *Batson* objection after the prosecutor used peremptory challenges to strike two black jurors was overruled, not to pursue challenges when the prosecutor ultimately used four, of the ten strikes that he exercised, to excuse black veniremen.
>
> . . . .
>
> In response, the prosecutor argues the extensive criminal experience of the two defense attorneys, the numerous motions filed and pre-trial hearings conducted by them, the interviews of several prospective mitigating witnesses, the filing for a sanity commission, and the hearsay statement of a psychologist that found defendant had no mental problems. In rebuttal, defendant points out that much of the prosecutor's argument is beyond the record.
>
> A claim of ineffectiveness is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal. *See, e.g., State v. Peart*, 621 So.2d 780, 787 (La.1993). The same approach is followed in capital cases. When the record permits, this court may reach the merits of complaints about counsel's performance and may grant relief if appropriate. *State v. Hamilton*, 92-2639 (La.7/1/97), 699 So.2d 29, 32-35, *cert. denied*, 522 U.S. 1124, 118 S.Ct. 1070, 140 L.Ed.2d 129 (1998) (several errors at the penalty phase, including counsel's failure to make an opening statement, to investigate and present available mental health evidence and a twelve-sentence closing argument resulted in the jury's not having benefit of relevant and admissible material, requiring a new penalty hearing); *State v. Sanders*, 93-0001 (La.11/30/94), 648 So.2d 1272, 1291-1293 (counsel's tepid opening at the penalty phase admitting unreadiness coupled with failure to present mitigating evidence, prepare witnesses, object to inadmissible unadjudicated other crimes evidence or make a closing argument required a new penalty phase); *State v. Myles*, 389 So.2d 12, 31 (La.1979) (failing to offer mitigating evidence followed by perfunctory and lackluster closing argument which did not emphasize the jurors' legal obligations designed to prevent arbitrary imposition of capital punishment required a new penalty hearing).
>
> In the present case, the record, standing alone, does not establish ineffective assistance of counsel. Indeed, defense counsel, in

order to meet the prejudice prong of the standard in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), probably will need a post-conviction evidentiary hearing to present mitigating evidence that allegedly was available and not used at trial. Moreover, the prosecutor did not attempt at trial to produce evidence that defendant's representation was adequate because that was not then at issue, and opportunity should be provided to rebut what is now asserted to be mitigating evidence that should have been presented (and, of course, are not in the record on appeal). It is for these very reasons that effective assistance claims are generally relegated to post-conviction proceedings, where both sides will have an opportunity to present evidence on the issue. We conclude that such a procedure is appropriate in this case.

*State v. Miller*, 99-192 pp. 23-25 (La. 9/6/00), 776 So.2d 396, 410-11, *cert. denied*, 531 U.S. 1194, 121 S.Ct. 1196 (2001) (footnotes omitted). This court will relegate Defendant's pro se ineffective assistance of counsel claims to the post-conviction relief process.

## DECREE

Defendant's convictions and sentences are affirmed. His arguments regarding ineffective assistance of counsel is relegated to the post-conviction relief process.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules-Courts of Appeal. Rule 2-16.3.